<u>**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**</u>

No. 15-5800

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Aug 09, 2016 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| DONALD JEREMY MASTIN, | ) | THE EASTERN DISTRICT OF |
| | ) | KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

<u>O R D E R</u>

Before: SUHRHEINRICH, DAUGHTREY, and ROGERS, Circuit Judges.

Donald Jeremy Mastin appeals the sentence imposed on his conviction for being a felon in possession of a firearm. The parties have waived oral argument, and this panel unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a).

On April 29, 2014, Kentucky State Police officers responded to a call reporting a domestic dispute at the home of Melissa Moore. Moore reported that, while their family was together going over Moore's and Mastin's recently deceased grandfather's will, Mastin, who was intoxicated at the time, became upset over items that he did not receive from his grandfather. Moore stated that, after family members began to accuse Mastin of stealing items from the residence the previous night, Mastin left the residence and returned with some of the items he had been accused of taking. He then began threatening everyone at the residence and, when Moore approached him, he pointed a gun at her face. Moore stated that, when she tried to knock the gun from Mastin's hand, he knocked her to the ground and then struck her in her head and

face with the gun approximately three times.  Mastin then fled the scene.  Officers eventually arrested Mastin on August 10, 2014, and charged him with second-degree assault, first-degree wanton endangerment, and possession of a firearm.  He pleaded guilty in Kentucky state court to four counts of wanton endangerment.  After federal agents determined that Mastin had two prior felony convictions, he was charged in a single-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Mastin pleaded guilty to the federal indictment on April 7, 2015.  Based on the U.S. Sentencing Guidelines (USSG) § 2A2.2(a), the guideline for aggravated assault, *see* USSG §§ 2K2.1(c)(1)(A), 2X1.1(a), the presentence report assigned a base offense level of 14.  The probation officer adjusted the offense level to 23 after applying the following enhancements: (1) two levels under § 2A2.2(b)(1) because the underlying offense—assault—involved "more than minimal planning"; (2) four levels under § 2A2.2(b)(2)(B) because a "dangerous weapon (including a firearm) was otherwise used"; and (3) three levels under § 2A2.2(b)(3)(A) because the victim sustained bodily injury.  After applying a three-level reduction for Mastin's acceptance of responsibility, pursuant to § 3E1.1(a), the probation officer applied a total offense level of 20.  Based on a total offense level of 20 and a criminal history category of VI, the applicable guidelines imprisonment range was 70 to 87 months.

Mastin objected to several aspects of the presentence report, including the two-level enhancement under § 2A2.2(b)(1) for more than minimal planning.  He noted that his sister did not pursue any charges against him, that she signed an affidavit stating that she would not testify against her brother, and that she wished that the charges be dismissed.  He further argued that a finding of more than minimal planning would not be warranted because "[t]here [wa]s no evidence of luring his sister to a given location, no attempt to conceal the alleged offense, and no attempt to conceal his identity to her."  The probation officer, however, concluded that the enhancement should apply, explaining that Mastin "could have walked away and cooled down.  Instead he returned with a weapon, becoming more irate and threatening others, resulting in his use of the weapon against a family member who was appearing to try to help defuse him."

At the sentencing hearing, Mastin reiterated his objection to the § 2A2.2(b)(1) enhancement. The court heard testimony from the government and Mastin and ultimately concluded that the § 2A2.2(b)(1) enhancement applied. The court explained that the fact that Mastin left the residence and then returned with certain items his family had accused him of taking and with a gun showed that there was more than minimal planning. In addition to applying the two other enhancements set forth in the presentence report, the court found that Mastin had provided false testimony at the hearing and applied a two-level enhancement for obstruction of justice under § 3C1.1. Because of Mastin's false testimony, the government opted not to move for a three-level reduction for acceptance of responsibility, and the court applied only a two-level reduction. The new total offense level was 23, which, coupled with criminal history category VI, yielded an amended guidelines imprisonment range of 92 to 115 months. The court sentenced Mastin at the top of that range to 115 months of imprisonment and three years of supervised release.

On appeal, Mastin argues that the district court improperly applied the § 2B2.2(b)(1) more-than-minimal-planning enhancement because there was no evidence to show that the assault involved more planning than is typical for commission of assault in its simple form. He contends that the assault occurred after an argument had broken out and while he was intoxicated and that "[a]ssaults often occur in this fashion." According to Mastin, although he left the scene and then returned, the assault occurred only after the argument between him and his sister flared up again after his return. Mastin characterizes the assault as "impulsive and spur of the moment."

The district court's determination that the assault involved more than minimal planning is a factual finding that we review for clear error. *United States v. Moore*, 225 F.3d 637, 642 (6th Cir. 2000). "'[M]ore than minimal planning' means more planning than is typical for the commission of the offense in a simple form." USSG § 2A2.2, cmt. n.2. "It is not necessary that a crime suggests planning in its most deliberative form; rather, it is sufficient if the evidence

suggests merely that the crime was not committed in its simplest form.'" *Moore*, 225 F.3d at 642.

The district court found that, before Mastin assaulted his sister, he left her residence for a time and returned with the gun he used in the assault and with the items he had been accused of taking. The court concluded that, "[a]lthough the residence was fairly close . . . he not only returned with the gun, but returned with some of these items. So he did have the opportunity to decide what he was planning to do and he had the opportunity to return with a weapon in his angered state." The court contrasted this with a hypothetical "[m]inimal planning" scenario of the assault taking place after Mastin simply went to his car to retrieve the gun and the other items, stating, "This really is more than that, and I conclude there was more than minimal planning involved."

Mastin argues that there was no evidence that he did not already have the gun when he initially left the scene. But, even if he did have the gun on him at all times, it does not change the fact that he had time to contemplate his actions during the time that he left and before returning to his sister's house. Mastin also argues that the assault took place only after the argument with his sister "flared up again." He, however, does not point to any evidence in the record that supports this version of events. Rather, his sister's description of the incident to the police, which the court credited, was that, after family members accused Mastin of stealing items from the house the previous night, Mastin "got very irate and left the residence, stayed gone for a short period of time, returned back to the residence with a firearm, began being very irate, belligerent . . . . [Moore] approached him, asked him to leave. He brandished a firearm and pointed it directly at her face." Given these facts, we cannot say that the district clearly erred in finding that the underlying assault involved more than minimal planning.

Accordingly, we **AFFIRM** the district court's judgment.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk